J-S66002-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.A.L., JR., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: J.L., FATHER | : | No. 1783 EDA 2018 |

Appeal from the Decree Entered May 24, 2018
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  AP# CP-51-AP-0000375-2018,
DP# CP-51-DP-0001725-2016, FID#  51-FN-001743-2016

| | | |
|---|---|---|
| IN THE INTEREST OF: M.M.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: J.L., FATHER | : | No. 1784 EDA 2018 |

Appeal from the Decree Entered May 24, 2018
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  AP# CP-51-AP-0000376-2018,
DP# CP-51-DP-0001726-2016, FID# 51-FN-001743-2016

| | | |
|---|---|---|
| IN THE INTEREST OF: T.M.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: J.L., FATHER | : | No. 1785 EDA 2018 |

Appeal from the Decree Entered May 24, 2018
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  AP# CP-51-AP-0000377-2018,
DP# CP-51-DP-0001727-2016, FID# 51-FN-001743-2016

| | | |
|---|---|---|
| IN THE INTEREST OF: I.M.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: J.L., FATHER | : | No. 1786 EDA 2018 |

Appeal from the Decree Entered May 24, 2018
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  AP# CP-51-AP-0000378-2018,
DP# CP-51-DP-0001728-2016, FID# 51-FN-001743-2016

BEFORE:  GANTMAN, P.J., PANELLA, J., and FORD ELLIOTT, P.J.E.

J-S66002-18

MEMORANDUM BY GANTMAN, P.J.:                    **FILED NOVEMBER 27, 2018**

Appellant, J.L. ("Father"), appeals from the decrees entered in the Philadelphia County Court of Common Pleas Family Court, which changed the family goal to adoption and granted the petitions of the Department of Human Services ("DHS") for involuntary termination of Father's parental rights to his minor children, J.A.L., Jr., M.M.L., T.M.L., and I.M.L. ("Children").[1]  We affirm.

In its opinion, the Family Court fully and correctly set forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.[2]

Father raises five issues for our review:

> WHETHER THE TRIAL COURT ERRED BY TERMINATING THE PARENTAL RIGHTS OF FATHER PURSUANT TO 23 PA.C.S.A. [§] 2511(A)(1) WITHOUT CLEAR AND CONVINCING EVIDENCE OF FATHER'S INTENT TO RELINQUISH HIS PARENTAL CLAIM OR REFUSAL TO PERFORM HIS PARENTAL DUTIES[?]
>
> WHETHER THE TRIAL COURT ERRED BY TERMINATING THE PARENTAL RIGHTS OF FATHER PURSUANT TO 23 PA.C.S.A. [§] 2511(A)(2) WITHOUT CLEAR AND CONVINCING EVIDENCE OF FATHER'S PRESENT INCAPACITY TO PERFORM PARENTAL DUTIES[?]

---

[1] Father does not challenge the "goal change" aspects of these four decrees. Instead, he focuses solely on the termination of his parental rights.  Therefore, we see no reason to involve or discuss in these appeals the recent decision of ***Commonwealth v. Walker***, ____ Pa. ___, 185 A.3d 969 (2018) (requiring prospectively, separate notices of appeal from single orders which resolve issues arising on separate trial court docket numbers).

[2] The record makes clear that, during the termination proceedings, Children were represented by a child advocate as well as a guardian *ad litem*.

> WHETHER THE TRIAL COURT ERRED BY TERMINATING THE PARENTAL RIGHTS OF FATHER PURSUANT TO 23 PA.C.S.A. [§] 2511(A)(5) WITHOUT CLEAR AND CONVINCING EVIDENCE TO PROVE THAT REASONABLE EFFORTS WERE MADE BY DEPARTMENT OF HUMAN SERVICES TO PROVIDE FATHER WITH ADDITIONAL SERVICES AND THAT THE CONDITIONS THAT LED TO PLACEMENT OF…CHILDREN CONTINUE TO EXIST[?]
>
> WHETHER THE TRIAL COURT ERRED BY TERMINATING THE PARENTAL RIGHTS OF FATHER PURSUANT TO 23 PA.C.S.A. [§] 2511(A)(8) WITHOUT CLEAR AND CONVINCING EVIDENCE THAT THE CONDITIONS THAT LED TO PLACEMENT OF…CHILDREN CONTINUE TO EXIST WHEN FATHER PRESENTED EVIDENCE OF COMPLIANCE WITH THE GOALS AND OBJECTIVES OF HIS FAMILY SERVICE PLAN[?]
>
> WHETHER THE TRIAL COURT ERRED BY TERMINATING THE PARENTAL RIGHTS OF FATHER PURSUANT TO 23 PA.C.S.A. [§] 2511(B) WITHOUT CLEAR AND CONVINCING EVIDENCE THAT NO PARENTAL BOND [EXISTED] BETWEEN FATHER AND…CHILDREN AND THAT TERMINATION WOULD SERVE THE BEST INTEREST OF…CHILDREN[?]

(Father's Brief at 7).

Appellate review of termination of parental rights cases implicates the following principles:

> In cases involving termination of parental rights: "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child."

*In re Z.P.*, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting *In re I.J.*, 972 A.2d 5, 8 (Pa.Super. 2009)).

> Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. … We must employ a broad, comprehensive review of the record in order

- 3 -

> to determine whether the trial court's decision is supported by competent evidence.

*In re B.L.W.*, 843 A.2d 380, 383 (Pa.Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).

> Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by the finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.

*In re Adoption of A.C.H.*, 803 A.2d 224, 228 (Pa.Super. 2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super. 2002). We may uphold a termination decision if any proper basis exists for the result reached. *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result. *In re R.L.T.M.*, 860 A.2d 190, 191-92 (Pa.Super. 2004).

*In re Z.P., supra* at 1115-16 (quoting *In re Adoption of K.J.*, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008)).

DHS filed a petition for the involuntary termination of Father's parental rights to Children on the following grounds:

**§ 2511.  Grounds for involuntary termination**

**(a)   General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the

- 4 -

following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

* * *

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

* * *

**(b)** **Other considerations.**—The court in terminating the

rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). "Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." *In re Z.P., supra* at 1117.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his… parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (internal citations omitted).

Termination under Section 2511(a)(1) involves the following:

To satisfy the requirements of [S]ection 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,

Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to

- 6 -

perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his... conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008) (internal citations omitted). Regarding the six-month period prior to filing the termination petition:

[T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his... parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations omitted).

The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326 (Pa.Super. 2002). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities."

- 7 -

*Id.* at 340. The fundamental test in termination of parental rights under Section 2511(a)(2) was long ago stated in the case of *In re Geiger*, 459 Pa. 636, 331 A.2d 172 (1975), where the Pennsylvania Supreme Court announced that under what is now Section 2511(a)(2), "the petitioner for involuntary termination must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In Interest of Lilley*, 719 A.2d 327, 330 (Pa.Super. 1998).

"Termination of parental rights under Section 2511(a)(5) requires that: (1) the child has been removed from parental care for at least six months; (2) the conditions which led to removal and placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." *In re Z.P., supra* at 1118.

"[T]o terminate parental rights under Section 2511(a)(8), the following factors must be demonstrated: (1) [t]he child has been removed from parental care for [twelve] months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." *In re Adoption of M.E.P.*, 825 A.2d 1266, 1275-76 (Pa.Super. 2003).

Under Section 2511(b), the court must consider whether termination

will meet the child's needs and welfare. ***In re C.P.***, 901 A.2d 516, 520 (Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond." ***Id.*** Significantly:

> In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship.
>
> When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation.

***In re Z.P., supra*** at 1121 (internal citations omitted).

"The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state, may properly be considered unfit and have his… rights terminated." ***In re B.L.L.***, 787 A.2d 1007, 1013 (Pa.Super. 2001). This Court has said:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this [C]ourt has held that the parental obligation is a positive duty which requires affirmative

performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his… ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re B.,N.M., supra* at 855 (internal citations omitted). "[A] parent's basic constitutional right to the custody and rearing of his… child is converted, upon the failure to fulfill his… parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *Id.* at 856.

After a thorough review of the record, the briefs of the parties, the applicable law, and the reasoned opinion of the Honorable Daine Grey, Jr., we conclude Father's issues merit no relief. The Family Court opinion comprehensively discusses and properly disposes of the questions presented. (*See* Family Court Opinion, filed July 23, 2018, at 6-13) (finding: **(1)** Father

- 10 -

exhibited settled purpose of relinquishing parental claim to Children and failed to perform parental duties for 21 months prior to filing of termination petitions; in July 2016, when Father was incarcerated, Mother left Children with paternal grandmother along with note explaining she no longer wanted Children; Children have been in kinship care since; since Children were placed in kinship care, Father failed to meet single case plan objectives, failed to address his domestic violence, and failed to complete drug and alcohol programs; Father also failed to show ability to provide appropriate housing for Children; Father offered no evidence that he made efforts to re-establish ties with Children during 21-month period before filing of termination petitions; **(2)** Father did not demonstrate concrete desire or ability to remedy problems that led to Children's placement; Father did not cooperate with services provided by CUA, including drug and alcohol treatment and domestic violence treatment; there have been allegations that Father sexually abused three of Children; as result, J.A.L., Jr. experienced suicidal ideations; Father also has history of domestic violence toward Children and Mother, and Children's caregiver reports she is very afraid of Father; Father's failure to comply with objectives left Children without essential parental care, and Father demonstrated he cannot or will not remedy his neglect of Children; **(3-4)** Children have been in foster care for approximately 21 months; Children were initially removed from home amid concerns of Father's emotional and physical abuse of Mother and Children, substance abuse, allegations of sexual abuse,

and history of domestic violence; since then, Father has not progressed in any treatment offered to him or shown he will remedy conditions, which led to placement of Children; evidence established termination and adoption are in best interests of Children; Children have strong bond with caregivers, maternal grandmother and maternal great-grandmother; **(5)** Children would not suffer irreparable harm if Father's parental rights were terminated; testimony demonstrated Children are not bonded with Father; Father failed to offer evidence of bond with Children; testimony showed Children's primary bond is with maternal grandmother and maternal great-grandmother; Father's attendance at parenting and anger management programs for mere month is insufficient to satisfy single case plan objectives; Father has been unable to meet Children's emotional, physical, and developmental needs, or provide Children with healthy, safe environment for 21 months). Accordingly, we affirm on the basis of the Family Court opinion.

Decrees affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/27/18

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
JUVENILE DIVISION

| | | |
|---|---|---|
| IN RE: J.A.L., Jr., a Minor | : | SUPERIOR COURT |
|      M.M.L., a Minor | : | 1783 EDA 2018 |
|      T.M.L., a Minor | : | 1784 EDA 2018 |
|      I.M.L., a Minor | : | 1785 EDA 2018 |
| | : | 1786 EDA 2018 |
| | : | |
| | : | COURT OF COMMON PLEAS |
| | : | CP-51-DP-0001725-2016 |
| | : | CP-51-DP-0001726-2016 |
| | : | CP-51-DP-0001727-2016 |
| | : | CP-51-DP-0001728-2016 |
| | : | CP-51-AP-0000375-2018 |
| | : | CP-51-AP-0000376-2018 |
| | : | CP-51-AP-0000377-2018 |
| | : | CP-51-AP-0000378-2018 |
| | : | FID: 51-FN-001743-2016 |
| | : | |
| APPEAL OF: J.A.L., Father | : | |
| | : | |

RECEIVED 2018 JUL 23 PH 2:57 PROPROTHY

**OPINION**

DAINE GREY JR., J.                                              DATE: July 23, 2018

J.A.L., ("Father") timely appeals this Court's decree entered on May 24, 2018, granting

the Philadelphia Department of Human Services' ("DHS") petitions to involuntarily terminate

parental rights as to his four children, J.A.L., Jr., born on June   , 2011, M.M.L., born on

December   2012, T.M.L., born on April   , 2014, and I.M.L., born on October   , 2015,

(collectively, the "Children") pursuant to the Adoption Act, 23 Pa. C.S.A. §§ 2511(a)(1), (2), (5),

(8) and (b).[1]

---

[1] Mother has agreed and is scheduled to voluntarily terminate her parental rights on a hearing scheduled
for August 9, 2018.

1

## I.    PROCEDURAL HISTORY & FACTS

The relevant facts and procedural history of this case are as follows: DHS first became aware of this family in October of 2015 when it received a General Protective Service ("GPS") report indicating that mother tested positive for THC during the birth of I.M.L. (N.T. 5/24/18 at 7). Based on this report, Community Umbrella Agency ("CUA") services were implemented using in-home services at the NorthEast Treatment ("NET"); however, at this point the Court was not involved. (*Id.* at 8). On April 17, 2016 DHS received a GPS report which alleged that Father had been physically and emotionally abusive toward the Children and mother; allegations of substance abuse for both parents; and allegations of abandonment. DHS subsequently filed dependency petitions for the Children. (*Id.* at 11).

At the adjudicatory hearing held on August 17, 2016, there was testimony that mother left Children with paternal grandmother and said she didn't want them anymore. (*Id.* at 11-12). Father was incarcerated at this time. (*Id.* at 12). The CUA social worker, Alexander Pagan testified that there were allegations of domestic violence between mother and Father. (*Id.* at 10). There was also testimony that Father smacked J.A.L., Jr. and left bruises on his face. (*Id.*). Mr. Pagan also testified that there were allegations of substance abuse for mother and Father. (*Id.*). This Court adjudicated the Children dependent based on present inability, granted full legal custody of the Children to DHS and placed the Children with their paternal grandmother. (Trial Court Order 08/17/16 at 1). In November of 2016 the home of paternal grandmother was deemed inappropriate for the Children. (N.T. 05/24/18 at 13). The Children were moved to their current caregiver's home. (*Id.*). The current caregiver of M.M.L., T.M.L., and I.M.L. is the maternal grandmother. (*Id.*). The current caregiver for J.A.L., Jr. is the maternal great grandmother. (*Id.*). An initial permanency review hearing was held on May 15, 2017, at which time, the permanency

2

goals for the Children were identified as reunification with parents. (Trial Court Order 05/15/17 at 1).

On May 9, 2018, DHS filed petitions to involuntarily terminate Father's parental rights to the Children pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8) and (b) and to change the Children's permanency goals to adoption. This Court conducted a combined termination and goal change hearing (collectively the "TPR" hearing) on May 24, 2018. At the TPR hearing, Mr. Pagan testified that the Children have been in custody of DHS since August 17, 201[6]. (N.T. 05/24/18 at 6). Father's single case plan objectives were: 1) to attend Menergy to address domestic violence, 2) participate in and complete drug and alcohol treatment, 3) to complete a parenting workshop and engage in anger management, and 4) provide appropriate housing for the Children. (*Id.* at 15). Father's single case plan objectives have been consistent throughout the life of the case. (*Id.*).

Father has remained consistently non-compliant with his objectives. (*Id.* at 79-80). Mr. Pagan testified that Father had never completed his objective to attend Menergy to address domestic violence, and was discharged for non-compliance after only attending three sessions. (*Id.* at 16-17). DHS has no documentation that Father has ever been to Menergy. (*Id.* at 16).

Throughout the life of this case, Father has never successfully completed a drug and alcohol program. (*Id.* at 21-22). Mr. Pagan testified that synthetic Marijuana, also known as K2, is Father's drug of choice. (*Id.* at 19). While enrolled in drug and alcohol treatment at The Wedge Recovery Center ("the Wedge"), he missed about eighty percent of the sessions. *(Id.* at 21). Father did not successfully complete the Wedge program. (*Id.* at 22). On March 9, 2018, Father enrolled in drug and alcohol treatment at the NET and only attended nine of thirty-one

3

scheduled treatment sessions. (*Id.* at 20-21). He was referred for intensive outpatient drug treatment, but was unsuccessfully discharged on May 30, 2018. (*Id.* at 59-60).

Father was also referred to anger management and parenting classes at the Achieving Reunification Center ("ARC"), but he only signed up for anger management. (*Id.* at 17). According to ARC, Father was referred twice in March of 2017, and also in February of 2018. (*Id.* at 18). After being referred to ARC those two times he only attended one orientation for anger management classes and was discharged for non-compliance. (*Id.*). He reenrolled at ARC on April 2, 2018 and only attended two out of six sessions. (*Id.*)

With respect to Father's housing, Mr. Pagan testified that on April 17, 2018 he met with Father at the Children's paternal grandmother's home where father currently resides. (*Id.* at 22). This home was previously deemed inappropriate placement for the Children. (*Id.* at 23-24). In his previous home, Father had missed a scheduled home assessment with CUA and failed to reschedule. (*Id.* at 26).

Upon release from incarceration, Father had visits with the Children from February of 2017 to April of 2017. (*Id.* at 62-64). These visits were suspended in April of 2017, as a result of an incident Child Protective Services ("CPS") reported alleging sexual abuse on the three elder Children. (*Id.* at 27). There is currently a stay-away order for Father in the home of the Children. (*Id.*). Father violated this stay-away order by sending text messages to the Children's caregiver in April of 2018. (*Id.* at 29). The Children's caregiver reports that she is very fearful of Father. (*Id.* at 30). Mr. Pagan testified that he believes the Children will suffer irreparable harm if they continue contact with Father. (*Id.* at 44). This belief is partly based on J.A.L., Jr.'s suicidal ideation after allegations of Father's abuse were disclosed. (*Id.* at 44-45).

4

Mr. Pagan indicated that it would be in the Children's best interest to terminate Father's parental rights because of his history of domestic violence, which has gone unaddressed. (*Id.* at 38). Children had to attend trauma therapy for what they have been exposed to by Father and mother. (*Id.* at 78). Father had exposed the Children to violence, anger, abuse and dysfunction during the early stages of life. (*Id.*). Over the last twenty-one months Father has failed to demonstrate any meaningful commitment to change the behavior that brought this case in. (*Id.*). Mr. Pagan further testified that the Children have a strong bond with their maternal grandmother and maternal great grandmother who are their pre-adoptive resources. (*Id.* at 38-39). The Children's strong bond with their pre-adoptive resources is further evidenced by the two-year old, I.M.L. crying for her grandmother when she drops her off at daycare. (*Id.* at 41). Mr. Pagan testified that the Children have progressed, are safe and will continue to prosper in the home of their caregivers. (*Id.* at 38-39).

At the TPR hearing, Father testified that he was incarcerated from July 13, 2016 to February 22, 2017. (*Id.* at 62). Mr. Pagan testified that Father is unemployed and has not provided CUA with any documentation of employment. (*Id.* at 26). Mr. Pagan also testified that during Father's home visit on April 17, 2018, Father admitted to a recent incident of domestic violence between himself and mother. (*Id.* at 30-31).

Based on the foregoing testimony, this Court issued a decree involuntarily terminating the parental rights of Father under 23 Pa. C.S.A. §§ 2511(a)(1), (2), (5), and (8) and finding, in accordance with 23 Pa. C.S.A. §§ 2511(b), that such termination best serves the developmental, physical, and emotional needs and welfare of the Children. (Trial Court Order 5/24/18 at 1). Father, along with counsel, filed a timely Notice of Appeal along with a Statement of Errors.

5

## II.    DISCUSSION

### A. This Court Properly Granted Petitioner's Petition to Involuntarily Terminate the Parental Rights of Father Pursuant to Sections 2511(a)(1), (2), (5), (8) and (b)

When considering an appeal from an order involuntarily terminating parental rights, an appellate court must accept as true the trial court's findings of facts so long as they are supported by the record, and then determine whether the trial court made an error of law or abused its discretion in rendering its decision. *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. Super. 2012). A trial court's decision constitutes an abuse of discretion only if it is manifestly unreasonable or is the product of partiality, prejudice, bias, or ill will. (*Id.*). An abuse of discretion will not merely occur because the reviewing court might have reached a different decision. *In re R.J.T.*, 608 Pa. 9 A.3d 1179, 1190 (Pa. Super. 2010).

The party seeking termination must establish, by clear and convincing evidence, the existence of grounds for termination. *In re J.L.C.*, 837, A.2d 1247, 1251 (Pa. Super. 2003). Clear and convincing evidence is testimony that is "so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*).

The involuntary termination of parental rights is governed by 23 Pa.C.S.A. § 2511, which requires a two-step analysis. In the first step, the party seeking termination must prove by clear and convincing evidence that the parent's conduct meets at least one of the eleven grounds set forth in Section 2511(a). *In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007). Once the court determines that the party seeking termination has proven at least one of the eleven grounds in Section 2511(a), then the petitioner can proceed to the second step. In the second step, the court must determine whether termination is in the best interest of the child, considering the

6

developmental, physical and emotional welfare of the child. 23 Pa.C.S.A. § 2511(b); *In re Adoption of S.P.*, 47 A.3d at 830. In conducting this analysis, the court should examine the emotional bond between parent and child, with close attention to the effect of what permanently severing any such bond will have on the child. *In re L.M.*, 923 A.2d at 511. Additionally, in order to affirm, an appellate court need only agree with the trial court as to any one subsection of 2511(a), as well as 2511(b). *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004).

This court found grounds for involuntary termination of Father's parental rights existed pursuant to 2511(a)(1), (2), (5), (8) and (b). (*See* Trial Court Order 05/24/18 at 1). This Court will address each subsection separately.

## 1. This Court Properly Terminated Father's Parental Rights Pursuant to Section 2511(a)(1)

Pursuant to Section 2511 (a)(1), Pennsylvania law provides that parental right may be involuntarily terminated after a petition is filed if, "[t]he parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties." 23 Pa.C.S.A. § 2511 (a)(1).

This Court found clear and convincing evidence that Father demonstrated a settled purpose of relinquishing parental claim to the Children and failed to perform parental duties for the Children twenty-one months prior to when the petition was filed. (N.T. 5/24/18 at 6). The Children were left in the care of paternal grandmother after mother left a note saying she no longer wanted the Children. (*Id.* at 11). Father was incarcerated at this time. (*Id.*) The Children were then removed from the paternal grandmother's care after the home was considered to be an inappropriate space for the Children. (*Id.* at 13). The Children were placed in November of 2016

7

with maternal grandmother and maternal great grandmother. (*Id.* at 13-14). As a result, the Children were adjudicated dependents on August 17, 2016. (*Id.* at 12). Father's failure to parent since the placement of the Children was demonstrated in his failure to meet his single case plan objectives.

Father failed to address his domestic violence and has never completed a drug and alcohol program. (*Id.* at 15-21). Father was enrolled at the NET, however only attended nine of thirty-one scheduled treatment sessions. (*Id.* at 20-21). Father was also enrolled in a treatment program at the Wedge, although missed approximately eighty percent of the sessions. (*Id.* at 21). Additionally, he has never shown an ability to provide the Children with appropriate housing. (*Id.* at 22-23).

These minimal objectives would have demonstrated Father's interest in caring for the Children; however, Father made little efforts to fulfill these objectives. Additionally, Father offered no evidence that he made even the slightest efforts to re-establish ties with the Children during the twenty-one month period prior to the filing of the termination petitions. Accordingly, this Court found termination of Father's parental rights warranted pursuant to 2511(a)(1).

2. **This Court Properly Terminated Father's Parental Rights Pursuant to Section 2511(a)(2)**

When terminating parental rights pursuant to Section 2511(a)(2), the moving party must prove by clear and convincing evidence:

> [t]he repeated and continued incapacity, neglect, abuse or refusal of the parent has caused the child to be without parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511 (a)(2); *See also, In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003). The grounds for termination of parental rights under Section 2511(a)(2), due to parental

8

incapacity that cannot be remedied, are not limited to affirmative misconduct, but may also include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002). In *In re Adoption of M.E.P.*, Westmoreland County Children's Bureau took custody of the child, citing the mother's inability to care for her child due to the mother's mental handicap. 825 A.2d at 1268. Following adjudication of the child, the mother was ordered to apply for welfare programs, obtain housing, and receive counseling in order to promote her independence and parenting skills. (*Id.* at 1269). It was reported that the mother did not attempt to obtain welfare or housing and refused counseling. (*Id.*). As a result, the trial court terminated the mother's parental rights approximately two years after the child was removed from the home. (*Id.* at 1270). The Superior Court found that the mother's inability to develop parenting skills, along with her refusal to fulfill her objectives, would leave the child without proper parental care; thus, termination of the mother's parental rights was warranted under Section 2511(a)(2). (*Id.* at 1273).

Applying *M.E.P.* and the elements set forth under 2511(a)(2) to the instant case, it is clear that DHS met their burden of demonstrating that termination was proper. The evidence established that "incapacity" and "refusal" under 2511(a)(2) existed given that Father failed to demonstrate a concrete desire or ability to remedy the problems that led to the Children's placement. Father failed to cooperate with the services provided by CUA, including drug and alcohol treatment and domestic violence treatment. (N.T. 5/24/18 at 79-82). Further, there have been allegations of sexual abuse made against Father, of T.M.J., M.M.L., and J.A.L. (*Id.* at 80). As a result of the allegations, J.A.L. experienced suicidal ideations. (*Id.* at 82). Father also has a history of domestic violence towards the Children and mother and even the Children's caregiver reports that she is very fearful of father. (*Id.* at 30).

9

This Court found that Father's failure to fully comply with his objectives throughout the life of the case has left the Children without essential parental care, and the cause of such neglect, refusal and continued incapacity will not be remedied by Father. Based on the foregoing, this Court found that competent evidence existed to justify the termination of Father's parental rights pursuant to Section 2511(a)(2).

### 3. This Court Properly Terminated Father's Parental Rights Pursuant to Sections 2511(a)(5) and (8)

As the requirements for terminating parental rights under Sections 2511(a)(5) and (8) are similar, this Court will address them simultaneously. To terminate pursuant to 2511(a)(5), the petitioner must prove that:

> (1) the child has been removed from parental care for at least six months; (2) the conditions which led to removal or placement of the child continue to exist; (3) the parents cannot or will not remedy the conditions which led to removal or placement within a reasonable period of time; (4) the services reasonably available to the parent are unlikely to remedy the conditions which led to removal or placement within a reasonable period of time; and (5) termination of parental rights would best serve the needs and welfare of the child.

*In re B.C.*, 36 A.3d 601, 607 (Pa. Super. 2012)[2]. In order to terminate under 2511(a)(8), the petitioner must show that "(1) the child has been removed from the care of the parent for at least twelve months; (2) the conditions that led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." *In re C.L.G.*, 956 A.2d 999, 1005 (Pa. Super. 2008)[3]. Furthermore, unlike 2511(a)(5),

---

[2] In *In re B.C.*, 36 A.3d 601 (Pa. Super. 2012), for example, Children and Youth Services obtained custody of the child after reports were received indicating that the mother and father could not care for the child. *Id.* at 608. In affirming the termination of the father's parental rights, the Superior Court emphasized the father's failure to comply with his objectives from Children and Youth Services, including obtaining housing and addressing his history as a sex offender through treatment. *Id.* The court stressed that the father's refusal to enter into treatment for the crimes he perpetrated led to the unsafe condition still being present. *Id.* Furthermore, the court determined that the father's refusal to participate in his objectives demonstrated that the services provided to him would not remedy the dependency. *Id.* at 610. Lastly, the court found that terminating the father's parental rights would best serve the needs and welfare of the child as it would provide the child with stability. *Id.* at 610.

[3] In *In re C.L.G.*, 956 A.2d 999 (Pa. Super. 2008), for example, the child was removed from the mother's care after the child tested positive for cocaine at birth. *Id.* Also, the mother did not have adequate housing and could not properly care for the child. *Id.* The largest obstacle to reunification was the mother's continued drug use and inability to obtain stable housing. *Id.* at 1005. The trial court terminated the mother's

10

termination under 2511(a)(8) does not require an evaluation of a parent's willingness or ability to remedy the conditions that led to placement. *See In re Adoption of R.J.S.*, 901 A.2d 502, 511 (Pa. Super. 2006) (citations omitted). Instead, 2511(a)(8) "requires only that the conditions continue to exist, not an evaluation of parental willingness or ability to remedy them." *C.L.G.*, 956 A.2d at 1007 (*citing In re S.H.*, 879 A.2d 802, 806) (Pa. Super. 2005)).

In the instant case, this Court determined that DHS satisfied the requirements of Sections 2511(a)(5) and (8). The Children have been in care for approximately twenty-one months. (N.T. 05/24/18 at 82). The Children were initially removed from the home amid concerns regarding Father's emotional and physical abuse, substance abuse, allegations of sexual abuse, and domestic violence history. Since that time, Father has not progressed in any of the treatment offered to him. (*Id.* at 82). As a result, this Court believes that Father will not remedy the conditions which led to the placement of his Children. The evidence clearly established that termination and adoption would be in the best interest and welfare of the Children. They have a strong bond with their maternal grandmother and maternal great-grandmother, their pre-adoptive resources. (*Id.* at 41). Thus, this Court properly terminated Father's parental rights pursuant to Sections 2511(a)(5) and (8).

### B. This Court Properly Ruled that it Would be in the Child's Best Interest to Terminate the Parental Rights of Father Pursuant to Section 2511(b)

Having found that the statutory grounds for termination have been satisfied pursuant to 2511(a), this Court further found that termination of Father's parental rights serves the best

---

parental rights pursuant to 2511(a)(8) approximately one year after the child was removed from her care. *Id.* at 1003. The Superior Court affirmed the trial court's ruling, stressing that waiting further for the mother to comply would toll the child's wellbeing. *Id.* at 1007. In the interest of creating stability for the child, the court found that termination of the mother's parental rights would best serve the needs and welfare of the child. *Id.* at 1008-1009.

interest of the Children pursuant to 2511(b).[4]

Under Section 2511(b), the party seeking termination must prove by clear and convincing evidence that termination is in the best interest of the child. *In re Bowman*, 647 A.2d 217, 218 (Pa. Super. 1994). In determining the best interest of the child, courts must consider both the needs and welfare of the child. *In re K.Z.S.*, 946 A.2d 753, 760 (Pa. Super. 2008). Intangibles such as love, comfort, security and stability are also considered when making a determination. *Id.* (*citing In re C.P.*, 901 A.2d 516, 520 (Pa. Super. 2006)). Furthermore, the parent-child relationship is examined in order to determine what effect the potential termination would have on the child. *See K.Z.S.*, 946 A.2d at 760. Typically, when examining the nature of the parent-child relationship, courts must consider whether there is a natural bond between the parent and child, and if termination of parental rights would sever "an existing, necessary, and beneficial relationship." (*Id.*). In cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. (*Id.* at 762-63.)

In the instant matter, this Court determined the Children would not suffer irreparable harm is Father's parental rights were terminated. There was compelling testimony offered at the TPR hearing that the Children are not bonded with Father. (*See* N.T. 5/24/18 at 42). Father failed to offer any evidence establishing existence of a parent-child bond. The testimony demonstrated that the Children's primary bond is with maternal grandmother and maternal great-grandmother. (*See Id.* at 41-41). Furthermore, this Court found Father's attendance to parenting and anger management for just one month insufficient to satisfy his single case plan objectives. (*Id.* at 79).

---

[4] *See In re L.M.*, 923 A.2d 505, 511(Pa. Super. 2007) ("Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b)").

12

This Court believes that we are nowhere closer to reunification now than we were when this case first came in on August 17, 2016. Additionally, in determining that termination would best serve the needs and welfare of the Children, the Court considered that Father has not been able to meet the Children's emotional, physical, and developmental needs, or provide the Children with a healthy, safe environment for twenty-one months prior to the TPR hearing. (*Id.* at 82). For the foregoing reasons, this Court properly granted DHS's petition to involuntarily terminate the parental rights of Father pursuant to Section 2511(b).

## I.    CONCLUSION

Accordingly, this Court respectfully requests that the instant appeal be denied.

BY THE COURT:

_____

J.

13

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **OPINION** was served on the following on

July 23, 2018:

**Counsel for Father**
Lawrence J. O'Connor, Esquire
1501 Arch Street
Philadelphia, PA 19102
( )    Served in Person
( )    Served by First Class Mail
( x )    Served by Attorney mailbox

**Counsel for Mother**
Daniel Kurland, Esquire
1501 Arch Street
Philadelphia, PA 19102
( )    Served in Person
( )    Served by First Class Mail
( x )    Served by Attorney mailbox

**Office of the City Solicitor-Child Welfare Unit**
Jasroop Gill-Gakhal, Esquire
1515 Arch Street, 16th Floor
Philadelphia, PA 19102
( )    Served in Person
( )    Served by First Class Mail
( x )    Served by Attorney mailbox

**Child Advocate**
Regine Charles-Asar, Esquire
1501 Arch Street
Philadelphia, PA 19102
( )    Served in Person
( )    Served by First Class Mail
( x )    Served by Attorney mailbox

14

**Guardian ad Litem**
Lindsay Palmer, Esquire
1501 Arch Street
Philadelphia, PA 19102
( )   Served in Person
( )   Served by First Class Mail
( x )   Served by Attorney mailbox

BY THE COURT:

J.

15